UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 21-177** |
| **v.** | * | **SECTION: "B"** |
| **SEAN MARTIN, et. al** | * | |

* * *

### GOVERNMENT'S MOTION IN LIMINE TO ALLOW AGENTS TO TESTIFY ABOUT SURVEILLANCE BEING CONDUCTED BY OTHER AGENTS AND SHARED LIVE OVER POLICE RADIO

**NOW INTO COURT** comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, and files the Government's Motion in *Limine* to Allow Agents to Testify about Surveillance Being Conducted by Other Agents and Shared Live Over Police Radio and Incorporated Memorandum in Support. Because this proposed testimony conveys present sense impressions that were being shared as the observations were being made, it falls outside of the prohibitions against hearsay and should be allowed at trial.

As the Court is aware, the United States used Title III wire intercepts of Sean Martin's phone as part of the investigation leading to this case. As is standard practice, the wire was monitored from a secured location where the phone intercepts were being heard in real time. This contemporaneous monitoring (and minimization) was required by the Court's order authorizing the Title III intercepts. The agents spent a few days monitoring the wire to gain some sense of Martin's patterns and then worked in teams to conduct surveillance in conjunction with monitoring the wire. The monitoring and surveillance are done together for several reasons, including to establish that the person believed to be using the phone being intercepted is in fact the person using it and to try to better understand what is being discussed by placing the calls in context of

corresponding events, like meetings or travel to particular locations. As is typically the case, the agents here, as part of the Title III authorization, were receiving GPS pings giving them the location of Martin's phone every 15 minutes, as well as historical cell site information letting them know which cell tower the phone was using when it made or received a call or text.

Because the wire must be monitored in real time from a particular location, the person monitoring the wire cannot also be conducting surveillance. Likewise, because the person conducting surveillance must be on the street observing things, that person cannot also be listening to the intercepted calls in real time. The agents necessarily must work as a team, with the person in the monitoring room listening to the calls and relaying the real time intelligence to agents in the field who are trying to observe meetings and other activity on the street and relaying what they are seeing to other agents assisting with the surveillance and the agent monitoring the wire. That is, there is not a single person who is doing both the surveilling and the monitoring, but rather a group of people who are communicating with each other as each person fulfills his role.

To present what the agents were doing to the jury in a coherent manner, it is necessary for any particular witness to the surveillance or calls to talk not only about what he was learning firsthand, but also about what he was learning in real time from his partners via radio. For example, on November 13, 2019, the agent who was monitoring the wire on Martin's phone heard a call between Martin and Jackson in which they arranged to meet at "mom's." The GPS ping showed Martin's phone was near the Esplanade at City Park apartments, where it had gone the prior day during a suspected drug deal. The agent monitoring the wire told the agents out in the field conducting surveillance to go to that area near the apartments because Martin had just arranged a meeting and so might be going to his suspected stash spot, which the agents believed was somewhere near the apartments. One of the agents in the field observed Martin's truck in the

2

parking lot of the Esplanade at City Park apartments and relayed that information via radio, which communication went to other agents in the field and the agent monitoring the wire. An agent then observed Martin in real time as he walked out of the apartments, got in his vehicle, and drove away, all of which he communicated to the other agents in the field and the agent monitoring the wire. The agents in the field then assisted each other in following Martin as he traveled from the apartments to "mom's," which is a bar near the intersection of Orleans and N. Claiborne. One would follow closely, communicating with the others and the person in the wire room. Then, in order not to be too obvious about the surveillance, another agent would take over the close position and so forth as the surveillance team work together to follow Martin while attempting not to alert him of their presence. They were communicating their observations in real time as they did this.

The United States intends to call both the agents conducting the surveillance and the agents who were monitoring the wire. But the government does not believe that it is limited to asking the agent who was listening to the wire only about the wire calls. The government intends to question that agent about what was happening with the surveillance being conducted in conjunction with the monitoring of the wire. Likewise, the government intends to ask the agents who were doing the surveillance about information from intercepted calls that was informing the surveillance. In each case, the agent who was not receiving the information firsthand (*i.e.*, the agent not monitoring the wire or conducting the surveillance, respectively) was nonetheless hearing in real time the firsthand information being shared by other members of the investigative team on the radio. These shared contemporaneous observations are present sense impressions and thus not hearsay.

The Federal Rules of Evidence exempt "present sense impressions" from the prohibition on hearsay. Specifically, Rule 803(1) provides that hearsay statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it," "are not

excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." FED. R. EVID. 803(1). The basis for this hearsay exception "relies on the contemporaneousness of the event under consideration and the statement describing that event. Because the two occur almost simultaneously, there is almost no 'likelihood of [a] deliberate or conscious misrepresentation.'" *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991) (citations omitted). To apply the present sense exception, the statements (1) must describe events that were personally witnesses and (2) must be made contemporaneously with the observation of the events (*i.e.*, while observing the events or very soon thereafter. *United States v. Polidore*, 690 F.3d 705, 720–21 (5th Cir. 2012); *see also United States v. Peacock*, 654 F.2d 339, 350 (5th Cir. 1981); *United States v. Jackson*, 204 F.3d 1118, 1999 WL 1330689, at *8 (5th Cir. Dec. 17, 1999).

The Fifth Circuit has upheld the application of the present sense exception to statements made in recorded 911 calls about what a caller was observing. In *Polidore*, 690 F.3d at 720, a caller to 911 had observed the defendant place drugs in a side door panel of a vehicle and place a call "while he was still observing the drugs 'right now.'" "Because (1) the caller's statements described and explained events that he personally witnessed and (2) the caller made the statements contemporaneously with his observation of the events—*i.e.*, while he was observing the events or very soon thereafter—[the Fifth Circuit held] that the statements were admissible as present sense impression under Rule 803(1)." *Id.*; *see also*, *e.g.*, *United States v. Morris*, No. CR 17-03-05, 2018 WL 4291754, at *2 (W.D. La. Sept. 7, 2018) ("[T]he 911 calls fit squarely within this exception, as they are statements made by declarants describing an event while or immediately after they have observed or experienced it."); *Buruca v. District of Columbia,* 902 F. Supp. 2d 75, 81 n.2 (D.D.C. 2012) (explaining that "[t]he audio from these 911 calls would likely fall under one of two exceptions to the rule against hearsay: Rule 803(1)'s exception for 'present sense impressions' or

Rule 803(2)'s exception for 'excited utterances.' "); *United States v. Mejia–Valez,* 855 F.Supp. 607, 613–614 (E.D.N.Y.1994) (finding that 911 calls made two minutes after a shooting and sixteen minutes after a shooting sufficed for purposes of contemporaneousness and qualified as present sense impressions; and if not, they still qualified as excited utterances); *United States v. Campbell,* 782 F.Supp. 1258, 1262 (N.D. Ill. 1991) ("The statements of Officer Schleder in the course of chasing and eventually arresting defendant also satisfy the three conditions necessary to application of the present sense impression exception to the hearsay rule."); *United States v. Morrow,* No. CRIM.A. 04–355CKK, 2005 WL 3163803, at *3 (D.D.C. June 9, 2005) ("courts across a multitude of jurisdictions ... have collectively concurred that audio tapes and written logs of 911 calls, telephone calls, and police dispatches are admissible under the present sense impression and excited utterance exceptions to the hearsay rule").

In *United States v. Peacock*, 654 F.2d 339, 350 (5th Cir. 1981), the Fifth Circuit applied the present sense impression doctrine when a man got off a telephone call and repeated the other person's comments to his wife immediately after the call. The court noted that "[t]here was no time for him to consciously manipulate the truth … [and that] [b]oth the letter and purpose of Rule 803(1) are served by admitting [the caller's] declaration." *Id*. The same reasoning applies here, where the testifying officer is reporting observations by another person shared in real time.

Although the Fifth Circuit does not appear to have specifically addressed information shared via radio transmissions like that at issue here, other circuits have expressly held that this type of testimony is admissible under the present sense impression exception. *United States v. Tercier*, 835 F. App'x 471, 484–85 (11th Cir. 2020), is directly on point. There, testifying agents had been allowed at trial to describe what other agents conducting surveillance had told them over the radio in real time as they were conducting the surveillance. The defendant in that case argue

5

that "the present sense impression hearsay exception does not apply because the witnesses were describing the out-of-court statements of the surveilling agents." *Id*. The Ninth Circuit rejected the argument, ruling that "the statements of the surveilling agents concerning events as they witnessed them were relayed simultaneously to the government witnesses and, therefore, the testimony was admissible under the present sense impression exception." *Id*. (citing *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995) ("The surveillance officers were providing a description of the events at the same time they were witnessing them, so the testimony was admissible under the present sense impression exception.")).

In *Gil*, 58 F.3d at 1422, the Ninth Circuit held that the district court allowing officers who were "note-takers" to testify regarding the observations reported by other surveillance officers "easily satisfy[ied] the requirements of [the present sense impression] exception." Likewise, in *United States v. Buelna-Valenzuela*, 176 F. App'x 891, 892 (9th Cir. 2006), testimony from two agents about what a third agent who did not testify broadcast over the radio—specifically that he was observing a Hispanic male wearing a bright yellow shirt was getting into the marijuana-loaded car and driving away—was "admissible under the present sense impression exception."

In addition to hearsay arguments—which have been rejected in favor of the present sense impression exception—defendants have also tried to challenge testimony from one officer about what other officers were observing on Confrontation Clause grounds. A Confrontation Clause violation occurs when a defendant does not have an opportunity to cross-examine an unavailable witness. *Crawford v. Washington*, 541 U.S. 36, 51-59 (2004). The Supreme Court has stated that "[a] witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009).

*United States v. Tercier*, 835 F. App'x 471, 484–85 (11th Cir. 2020), is also instructive on the Confrontation Clause issue. There, although one witness was allowed to describe what other agents had told him over the radio, those other agents also testified and/or were present at trial and available to testify if called. The court held that because they were "available for cross-examination, no Confrontation Clause issue exists." *Id*. (citing *Melendez-Diaz*, 557 U.S. at 309).

Likewise, here, the government intends to call the agents who conducted the surveillance, as well as the agents to whom the observations were being relayed by radio. The government is not trying to prevent the defense from having an opportunity to cross examine the surveillance agents by presenting their testimony through other witnesses. Rather, the government plans to present both witnesses, making them "available for cross examination." The government just wants to have a single witness testifying about both the calls and surveillance because it will be very difficult for the jury to understand how the calls and surveillance worked together if the jury hears only about the calls from one witness and then only about the surveillance from another.

For the foregoing reasons and authorities, special agents who were part of radio communications in which other agents were sharing contemporaneous observations should be allowed to testify about what the observing agents were seeing and describing over the radio, provided those observing agents either testify or be available to be called for cross examination should the defense desire to do so.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

/s/ David Haller
DAVID HALLER
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 2, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                              /s/ David Haller
                                              DAVID HALLER
                                              Assistant United States Attorney